IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

TYJUAN WALLACE,

    Plaintiff,

vs.       No. 01-2959-G/Bre

THE SYNERGY FOUNDATION, et al.,

    Defendants.

---

ORDER ASSESSING FILING FEE
ORDER OF DISMISSAL
AND
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

---

Plaintiff, Tyjuan Wallace, prisoner registration number 19300, an inmate at the Shelby County Correctional Center (SCCC),[1] has filed a complaint under 42 U.S.C. § 1983. The clerk of court shall file the case and record the defendants as The Synergy Foundation, Kerleska Conerly, and Joseph Dailey.

I.   Assessment of Filing Fee

Under the Prison Litigation Reform Act of 1995 (PLRA), 28 U.S.C. § 1915(b), all prisoners bringing a civil action must pay the full filing fee of $150 required by 28 U.S.C. § 1914(a). The in forma pauperis statute, 28 U.S.C. § 1915(a) merely provides the prisoner the opportunity to make a "downpayment" of a partial filing fee and pay the remainder in installments.

---

[1] The word prison is used in this order to refer to all places of confinement or incarceration, including jails, penal farms, detention and classification facilities, or halfway houses.
This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on 1|18|02

In this case, plaintiff has properly completed and submitted both an *in forma pauperis* affidavit and a prison trust fund account statement. Pursuant to 28 U.S.C. § 1915(b)(1), it is ORDERED that the plaintiff cooperate fully with prison officials in carrying out this order. It is further ORDERED that the trust fund officer at plaintiff's prison shall calculate a partial initial filing fee equal to twenty percent of the greater of the average balance in or deposits to the plaintiff's trust fund account for the six months immediately preceding the completion of the affidavit. When the account contains any funds, the trust fund officer shall collect them and pay them directly to the clerk of court. If the funds in plaintiff's account are insufficient to pay the full amount of the initial partial filing fee, the prison official is instructed to withdraw all of the funds in the plaintiff's account and forward them to the clerk of court. On each occasion that funds are subsequently credited to plaintiff's account the prison official shall immediately withdraw those funds and forward them to the clerk of court, until the initial partial filing fee is paid in full.

It is further ORDERED that after the initial partial filing fee is fully paid, the trust fund officer shall withdraw from the plaintiff's account and pay to the clerk of this court monthly payments equal to twenty percent (20%) of all deposits credited to plaintiff's account during the preceding month, but only when the amount in the account exceeds $10.00, until the entire $150.00 filing fee is paid.

Each time that the trust fund officer makes a payment to the court as required by this order, he shall print a copy of the prisoner's account statement showing all activity in the account since the last payment under this order, and file it with the clerk along with the payment.

All payments and account statements shall be sent to:

Clerk, United States District Court, Western District of Tennessee, 167 N. Main, Room 242, Memphis, TN 38103

and shall clearly identify plaintiff's name and the case number on the first page of this order.

If plaintiff is transferred to a different prison or released, he is ORDERED to notify the court immediately of his change of address. If still confined he shall provide the officials at the new prison with a copy of this order.

If the plaintiff fails to abide by these or any other requirement of this order, the court may impose appropriate sanctions, including a monetary fine, without any additional notice or hearing by the court.

The clerk shall mail a copy of this order to the prison official in charge of prison trust fund accounts at plaintiff's prison.

The obligation to pay this filing fee shall continue despite the immediate dismissal of this case. 28 U.S.C. § 1915(e)(2). The clerk shall not issue process or serve any papers in this case.

II. <u>Analysis of Plaintiff's Claims</u>

Plaintiff sues The Synergy Foundation (Synergy), Synergy clinical director Kerleska Conerley, and Shelby County Criminal Court Judge Joseph Dailey. Plaintiff was convicted of an unspecified crime and sentenced to a term of probation contingent upon his enrollment at The Synergy Foundation, a private, not-for-profit organization providing residential and outpatient alcohol and drug treatment services. Plaintiff alleges that he was terminated from the program after one week without due process. Plaintiff alleges that he was discriminated against for questioning Synergy rules and policies. Plaintiff alleges that he was told his dreadlocks were inappropriate, that he would not be allowed to attend church services for eight months, that he could not receive visitors for ten months, and that he would receive no wages because he was working in return for treatment. Plaintiff alleges that his termination from the program resulted in violation of his probation and incarceration at the SCCC. Plaintiff allege that he is now in prison "without probable cause." Plaintiff alleges the Synergy staff lied and he faults Judge Dailey for "going along" with Synergy's recommendation. Plaintiff seeks reinstatement of his probation, an investigation, and punitive damages.

Whenever a state formally or informally delegates to private persons functions that have traditionally been the exclusive prerogative of the state, those persons become state actors for the limited purpose of performing those functions. <u>Terry v. Adams</u>, 345 U.S. 461 (1953). <u>See</u> also <u>Blum v. Yaretsky</u>, 457 U.S. 1991 (1982).

4

The Sixth Circuit has held that private companies contracting with the state to provide services related to the incarceration and supervision of prisoners act under color of state law. Skelton v. Pri-Cor, Inc., 963 F.2d 100, 101 (6th Cir. 1991). See also West v. Atkins, 487 U.S. 42, 55-57 (1988)(private physician under contract to provide medical care to state prison inmates acts under color of state law). Plaintiff alleges that Synergy was a participant in his court-ordered treatment for substance abuse imposed as a condition of his sentence of probation. Synergy and Conerly thus qualify as state actors while carrying out this function.

Plaintiff alleges he was "discriminated" against because he "asked common sense questions." It is incumbent on one asserting an equal protection claim to prove the existence of some purposeful discrimination. McCleskey v. Kemp, 481 U.S. 279, 292 (1987). Moreover, the plaintiff must demonstrate that the purposeful discrimination "had a discriminatory effect on him." Id. A plaintiff must establish that a government official intentionally discriminated against him because of his membership in a protected class. See Henry v. Metropolitan Sewer Dist., 922 F.2d 332, 341 (6th Cir. 1990); Shango v. Jurich, 681 F.2d 1091, 1104 (7th Cir. 1982). Thus, plaintiff must establish that the discriminatory policy is motivated by his poverty, race, or some other unreasonable classification. See Joyce v. Mavromatis, 783 F.2d 56, 57 (6th Cir. 1986).

Plaintiff does not allege that he was subjected to any rules or regulations which differed from that of any other Synergy

5

program participant. Plaintiff has not even alleged that he is a member of a protected class. Therefore, plaintiff's conclusory allegation of "discrimination" does not amount to an equal protection claim. McCleskey, 481 U.S. at 292.

Half-way houses, probation, work-release programs, and confinement to different types of prisons are all options on a continuum of possible punishments and sanctions imposed by a court after a verdict, finding, or plea of guilty. See Griffin v. Wisconsin, 483 U.S. 868, 874 (1987). Defendants serving alternative sentences do not enjoy "the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special restrictions. Morrisey v. Brewer, 408 U.S. 471, 480 (1972).

> These restrictions are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large. These same goals require and justify the exercise of supervision to assure that the restrictions are in fact observed. Recent research suggests that more intensive supervision can reduce recidivism and the importance of supervision has grown as probation has become an increasingly common sentence for those convicted of servious crimes. Supervision, then, is a "special need" of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large. . . .

Griffin, 483 U.S. at 875. When viewed on this continuum, plaintiff's verbal challenges to rules, despite his belief in their legitimacy, would render him non-compliant and disruptive, just as the same behavior in a prison inmate would constitute refusal to obey an order.

The court inquires whether the allegedly unconstitutional rules are reasonably related to the dual goals of the sentence imposed: the rehabilitation of the defendant and the protection of the public. See, e.g. United States v. Holloway, 740 F.2d 1371, 1383 (6th Cir. 1984); United States v. Stine, 675 F.2d 69, 71 (3rd Cir. 1982); United States v. Lawson, 670 F.2d 923, 929 (10th Cir. 1982); United States v. Lowe, 654 F.2d 562, 567 (9th Cir. 1981); United States v. Smith, 618 F.2d 280, 282 (5th Cir. 1980); United States v. Consuelo-Gonzalez, 521 F.2d 259 (9th Cir. 1975). Plaintiff's allegations, viewed in the context of his "conditional liberty" status, do not demonstrate that defendants' rules deprived him of any right secured by the Constitution or federal law. Parrat v. Taylor, 451 U.S. 527, 535 (1981).

Plaintiff contends that Synergy's grooming, visitation, and church attendance policies violated his constitutional rights. The rules which plaintiff challenges here are acceptable methods of assuring that plaintiff's probation serves as a period of genuine rehabilitation. Restrictions on free exercise rights, visitation, and grooming are permissible if reasonably related to a legitimate penological objective. See, e.g., Thornburgh v. Abbott, 490 U.S. 401, 414-16 (1989); O'Lone v. Estate of Shabazz, 482 U.S. 342, 350-53 (1987); Turner v. Safley, 482 U.S. 78, 92 (1987); Pell v. Procunier, 417 U.S. 817 (1974); Williams v. Wilkinson, 1997 WL 809971 (6th Cir. 1997); Pollock v. Marshall, 845 F.2d 656 (6th Cir. 1988); Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984).

Likewise, plaintiff's allegation that he was required to perform a job as payment for his drug treatment does not amount to an allegation of the deprivation of a liberty interest. "[T]he Constitution does not create a property or liberty interest in prison employment [and] any such interest must be created by state law by 'language of an unmistakably mandatory character.'" Newsom v. Norris, 888 F.2d 371, 374 (6th Cir. 1989)(citations omitted)(quoting Ingram v. Papalia, 804 F.2d 595, 596-97 (10th Cir. 1986)); Watts v. Morgan, 572 F. Supp. 1385, 1388 (N.D. Ill. 1983). See also Codd v. Brown, 949 F.2d 879, 882 (6th Cir. 1991)(inmate had no liberty or property interest under the Constitution in participation in a work-release program).

As the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed while serving his sentence at a drug treatment center. Williams v. Meese, 926 F.2d 994, 997 (10th Cir. 1991); James v. Quinlan, 866 F.2d 627, 629-30 (3d Cir. 1989); Garza v. Miller, 688 F.2d 480, 485 (7th Cir. 1982). See also Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987); Adams v. James, 784 F.2d 1077, 1079 (11th Cir. 1986); Lyon v. Farrier, 727 F.2d 766, 769 (8th Cir. 1984); Manning v. Lockhart, 623 F.2d 536, 538 (8th Cir. 1980). Accord, Baumann v. Arizona Dep't of Corrections, 754 F.2d 841, 846 (9th Cir. 1985)(no constitutional right to jobs and educational opportunities); Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir. 1985)(no liberty or property interest in vocational training);

Hoptowit v. Ray, 682 F.2d 1237, 1254-55 (9th Cir. 1982)(no constitutional right to rehabilitation).

Furthermore, plaintiff does not allege any injury or harm from his short time with Synergy. Plaintiff alleges that his harm or injury was the revocation of his probation and subsequent incarceration. Plaintiff was convicted of a crime and has no right under the Constitution to be conditionally released before the expiration of a valid sentence. Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 11 (1979). Tennessee law and regulations do not create a right to probation. Tenn. Code Ann. § 40-28-117 (1990). See Wright v. Trammell, 810 F.2d 589, 591 (6th Cir. 1987). As plaintiff had no liberty interest in probation or community corrections program, any claim that his probation or program participation has been denied is not legally cognizable.

Just as plaintiff has no constitutional right to probation, he does not have a claim under the Fourteenth Amendment Due Process Clause for being denied treatment at a drug center through a rehabilitation or work-release program. Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); Codd, 949 F.2d at 882. Work release is not the type of condition that conceivably constitutes a cognizable liberty interest under Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Dominique v. Weld, 73 F.3d 1156, 1160 (1st Cir. 1996). Plaintiff thus has no claim under the Due Process Clause for any defendant's denial of partricipation in the program.

Furthermore, plaintiff's claim that he was terminated from the Synergy program without due process is blatantly untrue. Plaintiff

9

admits he received a court hearing. He contends that Judge Dailey believed the testimony of Synergy employees which plaintiff characterizes as "lies." Thus, plaintiff was provided with a forum to present these complaints. Plaintiff essentially seeks review of Judge Dailey's determination.

Plaintiff has no cause of action under § 1983 where his claims hinge on factual proof that question the validity of a state court order revoking or violating his probation unless and until the violation of probation is declared illegal or his underlying conviction is set aside. See Heck v. Humphrey, 512 U.S. 477, 481-82 (1994); Schilling v. White, 58 F.3d 1081, 1086 (6th Cir. 1995). Cf. Preiser v. Rodriguez, 411 U.S. 474, 500 (1973)(whenever the relief sought is release from prison, the only remedy is through a habeas petition, not a § 1983 complaint).

Plaintiff may not sue Judge Dailey for decisions and actions arising from plaintiff's criminal prosecution or sentencing. A criminal court judge is a judge of a court of general jurisdiction. A judge of a court of general jurisdiction enjoys absolute immunity from civil suits for money damages. Mireles v. Waco, 502 U.S. 9, 12 (1991); Stump v. Sparkman, 435 U.S. 349, 359-60 (1978); Pierson v. Ray, 386 U.S. 547, 553-54 (1967); Barnes v. Winchell, 105 F.3d 1111, 1115 (6th Cir. 1997). "This far-reaching protection is justified by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability." DePiero v. City of Macedonia, 180 F.3d 770, 783-84 (6th Cir. 1999)(citations

omitted). The only exceptions to the protection of absolute judicial immunity are liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity, and actions which, though judicial in nature, are taken in the complete absence of all jurisdiction. Id. (citing Mireles, 502 U.S. at 11-12). A judicial action is one that is integrally related to the judge's performance of the adjudicative function. Mireles v. Waco, 502 U.S. at 12 (per curiam)(holding that judge's direction to courtroom deputies to find counsel in another court and forcibly bring him into the courtroom is judicial act because the act is one that is normally performed by a judge); Forrester v. White, 484 U.S. 219, 227-29 (1988)(explaining distinction between judicial and non-judicial actions and holding that absolute immunity does not attach to non-judicial administrative decisions regarding employment of court personnel); Stump, 435 U.S. at 362 (holding that "the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge . . . ."); DePiero, 180 F.3d at 784 (same). Plaintiff's claims against Judge Dailey are barred by absolute immunity.

Accordingly, this entire complaint lacks an arguable basis either in law or in fact and is, therefore, frivolous. See Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989).

As the complaint is frivolous, it is DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

III. <u>Appeal Issues</u>

The next issue to be addressed is whether plaintiff should be allowed to appeal this decision <u>in forma pauperis</u>. Twenty-eight U.S.C. § 1915(a)(3) provides that an appeal may not be taken <u>in forma pauperis</u> if the trial court certifies in writing that it is not taken in good faith.

The good faith standard is an objective one. <u>Coppedge v. United States</u>, 369 U.S. 438, 445 (1962). An appeal is not taken in good faith if the issue presented is frivolous. <u>Id.</u> Accordingly, it would be inconsistent for a district court to determine that a complaint is too frivolous to be served, yet has sufficient merit to support an appeal <u>in forma pauperis</u>. See <u>Williams v. Kullman</u>, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the court to dismiss this case as frivolous also compel the conclusion that an appeal would be frivolous.

It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by plaintiff is not taken in good faith, and plaintiff may not proceed on appeal <u>in forma pauperis</u>.

The final matter to be addressed is the assessment of a filing fee if plaintiff appeals the dismissal of this case. The United States Court of Appeals for the Sixth Circuit has held that a certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). <u>McGore v. Wrigglesworth</u>, 114 F.3d 601, 610-11 (6th Cir. 1997). <u>McGore</u> sets out specific procedures for implementing the PLRA. Therefore, the

plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee,[2] he must comply with the procedures set out in McGore and § 1915(b).

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by this plaintiff, this is the first dismissal in this district of one of his cases as frivolous.

IT IS SO ORDERED this 17TH day of January, 2002.

*Julia Smith Gibbons*
JULIA SMITH GIBBONS
UNITED STATES DISTRICT JUDGE

---

[2] The fee for docketing an appeal is $100. See Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913. Under 28 U.S.C. § 1917, a district court also charges a $5 fee:

> Upon the filing of any separate or joint notice of appeal or application for appeal or upon the receipt of any order allowing, or notice of the allowance of, an appeal or of a writ of certiorari $5 shall be paid to the clerk of the district court, by the appellant or petitioner.

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 3 in case 2:01-CV-02959 was distributed by fax, mail, or direct printing on January 18, 2002 to the parties listed.

Tyjuan Wallace
SCCC-MEMPHIS
Shelby County Correc
19300
1045 Mullins Station Rd
Memphis, TN 38134

Trust Fund Officer
SCCC-MEMPHIS
Shelby County Correc
1045 Mullins Station Rd
Memphis, TN 38134

Honorable Julia Gibbons
US DISTRICT COURT